No. 21-6108

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

COMMONWEALTH OF KENTUCKY and STATE OF TENNESSEE,

Plaintiffs-Appellees,

v.

JANET YELLEN, in her official capacity as Secretary of the Treasury; RICHARD K. DELMAR, in his official capacity as Acting Inspector General of the Department of the Treasury; and the U.S. DEPARTMENT OF THE TREASURY,

Defendants-Appellants.

On Appeal from the United States District Court
for the Eastern District of Kentucky

**PETITION FOR REHEARING EN BANC**

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

MARK B. STERN
ALISA B. KLEIN
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 305-8849*

## INTRODUCTION

In the American Rescue Plan Act, Congress allocated new federal funds to States to be expended for any of several broad purposes. As a corollary, Congress specified in the Offset Provision that these new grants may not be used to directly or indirectly offset a reduction in net tax revenue resulting from a change in state law. The Department of the Treasury accordingly explained that if a State accepting funds provided by the Act chooses to cut taxes, it must have sufficient funds of its own—either from revenue increases or from spending cuts outside areas where it is spending the new federal funds—to pay for any resulting reduction in tax revenue.

The panel held, as "a matter of statutory interpretation," that the Offset Provision cannot be enforced against Tennessee. Op. 28, 34 n.20. The panel reasoned that this statutory restriction was not clear enough to be enforceable, under the principle set forth in *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981), in part because the panel believed that the provision was susceptible to a broader reading than the one the Treasury Department had adopted and in part because the panel believed that Congress could not leave certain details (such as the baseline for measuring a reduction in net tax revenue) to the agency.

This case should be reheard en banc. The panel decision is exceptionally important because it affirmed a permanent injunction against the enforcement of an Act of Congress. And the ruling is incorrect for two overarching reasons.

First, the clear-statement principle articulated in *Pennhurst* is simply a tool of statutory interpretation that the Supreme Court has used to resolve certain statutory ambiguities in a grant recipient's favor, not a basis for a categorical bar against the enforcement of a restriction on the use of federal funds. A court cannot properly "interpret" a statute, as the panel did, in a way that renders it meaningless. If there were actually a concern that the Treasury Department might interpret the Offset Provision broadly, then the *Pennhurst* principle could provide reason to reject that broad interpretation. But as the panel recognized, the Treasury Department has disavowed the broad interpretation, so there is no such risk.

Second, even if the *Pennhurst* principle could properly be a basis for categorically enjoining the enforcement of a statute the application of which might in some contexts be unclear, Congress spoke with the requisite degree of clarity when it enacted the Offset Provision. Contrary to the panel's understanding, the Supreme Court's precedents allow Congress to assign responsibility to the Treasury Department to implement the provision through regulations addressing such matters as the baseline and other mechanics of calculating a reduction in a State's net tax revenue resulting from changes in state law.[1]

---

[1] If the Court grants rehearing en banc, we respectfully reserve the right to renew our threshold argument that Tennessee's claims are not justiciable.

## STATEMENT

1. The American Rescue Plan Act of 2021, Pub. L. No. 117-2, 135 Stat. 4, created a Coronavirus State Fiscal Recovery Fund, allocating nearly $200 billion in grants to help States and the District of Columbia mitigate the fiscal effects of the pandemic. 42 U.S.C. § 802(a)(1); *see id.* § 802(b)(3)(A). Section 802 allows States to use Fiscal Recovery Funds to cover broadly defined categories of costs incurred through 2024, including to provide assistance to households, businesses, and industries affected by the pandemic; to provide premium pay to workers performing essential work during the pandemic; to pay for state government services to the extent of revenue losses due to the pandemic; and to make necessary investments in water, sewer, or broadband infrastructure. *Id.* § 802(c)(1).

In addition to identifying the permissible uses of Fiscal Recovery Funds, Section 802 includes two "[f]urther restriction[s]" on the use of the funds. 42 U.S.C. § 802(c)(2) (heading). One is that a State may not deposit the funds into a pension fund. *Id.* § 802(c)(2)(B). The other, at issue here, is that a State "shall not use the funds … to either directly or indirectly offset a reduction in the net tax revenue of such State" resulting from a change in state law during a covered time period. *Id.* § 802(c)(2)(A).

2. Congress authorized the Treasury Department "to issue such regulations as may be necessary or appropriate to carry out" the Fiscal Recovery Fund. 42 U.S.C. § 802(f). In January 2022, the Department issued a final rule implementing the statutory

conditions on the use of Fiscal Recovery Funds, including the Offset Provision. *Coronavirus State and Local Fiscal Recovery Funds*, 87 Fed. Reg. 4338 (Jan. 27, 2022); *see id.* at 4423-4429.

The regulations describe the circumstances in which a State that accepts Fiscal Recovery Funds may permissibly cut taxes without implicating the Offset Provision. First, because the provision applies only when a State experiences a reduction in net tax revenue, it is not implicated at all if the State cuts taxes but maintains its prior level of state tax revenue as the result of economic growth. *See* 87 Fed. Reg. at 4427. Second, because the provision restricts only the use of the new federal funds, it is not implicated if a State uses its own funds to offset a reduction in its net tax revenue by cutting its expenditures of state funds in a "department, agency, or authority" where it is not spending Fiscal Recovery Funds. *See id.* The rule explains that if a State were to cut its spending of state funds in a "department, agency, or authority" in which it *is* using Fiscal Recovery Funds, and if it were to use the saved state money to pay for a tax cut, then it would be "indirectly" using Fiscal Recovery Funds to pay for the tax cut. *Id.* at 4427-4428. But as long as the State can pay for a tax cut with its own funds, it is free to cut taxes.

3.  Kentucky and Tennessee brought this action shortly after the enactment of the American Rescue Plan Act. The operative complaint alleged that the Offset Provision "prohibits any State accepting federal financial assistance under the Act from lowering the tax burden on its citizens for the next four years" and that it is therefore

unconstitutional on various grounds. Amended Complaint ¶¶ 5, 52-83, RE23, PageID #132, 148-154. The district court enjoined the enforcement of the Offset Provision against both plaintiffs. *Kentucky v. Yellen*, 563 F. Supp. 3d 647 (E.D. Ky. 2021).

The panel vacated the injunction as to Kentucky. The panel concluded that, although Kentucky had standing at the outset of this litigation, the Treasury Department eliminated Kentucky's injuries by disavowing the interpretation of the Offset Provision that Kentucky had asserted would violate the Constitution. Op. 12-20. The panel concluded, however, that Tennessee had established jurisdiction through a declaration articulating two compliance obligations supposedly imposed by the implementing regulations. Op. 20-26, 34-35, 34 n.20.

On the merits, the panel concluded "[a]s a matter of statutory interpretation[] … that the Offset Provision does not clearly explain (1) how to calculate a 'reduction' in net tax revenue, (2) how to determine whether such a reduction resulted from a tax cut, or (3) how to tell what particular conduct constitutes an 'indirect' offset." Op. 28. The panel agreed with the government that these "indeterminacies" do not render the Offset Provision "'unconstitutional,'" Op. 27, but concluded—as "a matter of statutory interpretation"—that the Offset Provision is not clear enough to be enforced, Op. 28, 34-35, 34 n.20.

Judge Nalbandian wrote separately, indicating that he would have affirmed the injunction as to Kentucky (as well as Tennessee). Op. 43-51.

## ARGUMENT

Rehearing en banc is warranted in light of the importance of the panel's decision to affirm a permanent injunction barring enforcement of a federal statute. For the reasons outlined below, the panel decision rests on errors of law.

### A. The *Pennhurst* Clear-Statement Principle Is Not A Basis To Hold A Statutory Funding Condition Categorically Unenforceable

1. The *Pennhurst* principle is a tool of statutory interpretation, which the Supreme Court and other courts have used to resolve disputes over the meaning of grant conditions in a grant recipient's favor. The principle is not a basis to declare a federal statute categorically unenforceable, as the panel did.

In *Pennhurst* itself, the question was whether Congress intended the provision at issue, 42 U.S.C. § 6010, "to be hortatory" or "mandatory." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 24 (1981). In adopting the former construction, the Court relied on a close analysis of the provision's text, structure, and legislative history. For example, the Court emphasized that "[w]hen Congress intended to impose conditions on the grant of federal funds, as in" other provisions of the same statute, "it proved capable of doing so in clear terms," and that the provision in question, "in marked contrast, in no way suggests that the grant of federal funds is 'conditioned' on a State's funding the rights described therein." *Id.* at 23. The Court found that interpretation of the text to be well supported by the statutory structure and legislative history. *Id.*

In later cases, the Supreme Court has relied on the *Pennhurst* clear-statement principle to resolve other statutory ambiguities in a grant recipient's favor. In *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291 (2006), for example, the Supreme Court considered the meaning of the fee-shifting provision of the Individuals with Disabilities Education Act. In interpreting that provision, the Court concluded that it encompassed attorneys' fees but did not clearly encompass expert fees. The Court thus vacated an award of expert fees but did not call into question the provision's ongoing applicability to attorneys' fees. Similarly, in *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562 (2022), the Supreme Court interpreted the term "appropriate relief" in certain nondiscrimination statutes. The Court concluded that this term encompassed traditional contract remedies but did not clearly encompass emotional-distress damages. For that reason, the Court affirmed the dismissal of a claim for such damages but did not call into question the ongoing availability of traditional contract remedies under the statutes.

The various opinions in *School District of the City of Pontiac v. Secretary of the U.S. Department of Education*, 584 F.3d 253 (6th Cir. 2009) (en banc)—opinions joined, in combination, by well over a majority of the en banc Court—embraced this understanding of the *Pennhurst* clear-statement principle in addressing the question whether the No Child Left Behind Act was sufficiently clear to require States accepting funds under the Act to comply with its requirements where doing so would require them to spend additional funds of their own. *See id.* at 284 (Sutton, J., concurring in the order) ("Even

though this clear-statement rule has constitutional roots, it remains a rule of *statutory* interpretation[.]"); *id.* at 311 (Gibbons, J., concurring in part and dissenting in part) (similar); *id.* at 271-272 (opinion of Cole, J.) (applying the rule in this fashion). The Court divided on that question of statutory interpretation, but no member of the Court—including those who joined Judge Cole's opinion, which would have reversed the dismissal of the plaintiffs' challenge to the Act—suggested that the Act's requirements might be categorically unenforceable on the theory that they were ambiguous. *See id.* at 278 (opinion of Cole, J.) ("States and school districts must comply with the [Act's] mandates to the extent of … funds received [under the Act] and must support their own prior levels of funding as [the Act] requires.").

Other than in this and other challenges to the Offset Provision, no court of which we are aware has *ever* relied on the *Pennhurst* clear-statement principle as a basis for holding a condition on the use of federal funds to be categorically unenforceable.

2. The panel here agreed that "indeterminacies" in a funding condition do not render it "'unconstitutional,'" rejecting plaintiffs' arguments to the contrary. Op. 27-28, 34-35, 34 n.20. But the panel nonetheless proceeded to affirm the injunction barring any enforcement of the Offset Provision—in other words, proceeded to hold the provision categorically unenforceable. That holding, even if framed "as a matter of statutory interpretation" (Op. 34 n.20), is functionally indistinguishable from a holding that the provision is "unconstitutional" in all its applications, even those clearly covered by its text.

Even aside from the fact that no court has ever applied *Pennhurst* in this way, the panel's rationale transgresses basic principles of judicial decisionmaking. A court cannot properly enjoin the enforcement of a federal statute, on its face and in every context, in the name of "statutory interpretation." To do so is to "interpret" the statute to be a nullity, notwithstanding the Judicial Branch's duty, "'out of respect for Congress,'" *Jones v. United States*, 526 U.S. 227, 239-240 (1999), to interpret statutes in a way that allows them to be upheld.

The panel's supposedly "statutory" rationale also effects an end-run around the limitations governing facial constitutional challenges. "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). It would be impermissible to hold that a funding condition can never be applied as a constitutional matter—even against conduct that violates the condition's plain terms—because the condition is in some respects ambiguous. It is no more permissible to reach the same conclusion "as a matter of statutory interpretation" (Op. 34 n.20).

3.   The panel's novel theory also exceeds the bounds of the cause of action supported by the complaint. In his separate opinion, Judge Nalbandian raised the question of "what the States' cause of action is here." Op. 48 n.4. The only claims alleged in the complaint are constitutional challenges to the Offset Provision; plaintiffs never

even attempted to identify a cause of action that would allow them to seek to enjoin a statutory provision's enforcement as a matter of statutory interpretation.

4. For those reasons, even if the panel were correct to regard the Offset Provision as lacking the clarity required by *Pennhurst*, it should not have affirmed the district court's categorical injunction against enforcement of the Offset Provision. If the Treasury Department actually brought a recoupment proceeding under the Offset Provision, then a court reviewing a recoupment determination could properly apply the *Pennhurst* clear-statement principle in determining whether the Department permissibly interpreted the provision. But as the panel rightly recognized, a court cannot declare a funding condition to be "unconstitutional" on the theory that its application might in some contexts be unclear (and no court, to our knowledge, has ever made such a declaration as to any funding condition besides this one). The panel erred in becoming the first court ever to reach a functionally equivalent holding under the guise of statutory interpretation. The district court's injunction against enforcement of the Offset Provision can and should be reversed on that ground alone.

### B. Congress Spoke With The Requisite Clarity In Enacting The Offset Provision

Even if the *Pennhurst* clear-statement principle could properly have been a basis for the injunction, moreover, there should be no doubt that Congress spoke with the clarity needed under *Pennhurst*. There, the Supreme Court held that the provision at issue could not be enforced against the defendant state entity because Congress did not

specify with sufficient clarity that the provision was "mandatory" rather than "hortatory." *Pennhurst*, 451 U.S. at 24. This Court has accordingly read *Pennhurst* as requiring only that Congress "provide … 'clear notice'" to States accepting federal funds "that funding is conditioned upon compliance with certain standards"—*i.e.*, that the standards are mandatory rather than merely hortatory. *Cutter v. Wilkinson*, 423 F.3d 579, 586 (6th Cir. 2005).[2]

Here, Congress met that standard: It made clear that the prohibition against using Fiscal Recovery Funds to pay for tax cuts is a mandatory and enforceable condition on the use of those funds. The Offset Provision parallels the statute's other restriction on the use of Fiscal Recovery Funds, which prohibits the use of such funds for deposit in a pension fund. Just as the Treasury Department may recoup Fiscal Recovery Funds that a State spends beyond the categories of permissible use identified in § 802(c), it may recoup funds that a State spends in contravention of the restrictions set forth in § 802(c)(2), which serve to reinforce the requirement that funds be used only for one of the permissible purposes set forth in § 802(c).

---

[2] In so ruling, this Court followed the reasoning of the Seventh Circuit, which accords with that of every other circuit to have addressed the same question. *See Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003); *see also Van Wyhe v. Reisch*, 581 F.3d 639, 650-651 (8th Cir. 2009); *Benning v. Georgia*, 391 F.3d 1299, 1306 (11th Cir. 2004); *Mayweathers v. Newland*, 314 F.3d 1062, 1067 (9th Cir. 2002). The panel suggested that *Cutter* did not adopt the reasoning in *Charles*, but we respectfully submit that *Cutter* quoted the Seventh Circuit's reasoning with approval.

The Supreme Court has long held that, once Congress makes clear that a condition on the use of federal funds is mandatory and enforceable, it may leave the particulars of implementing the condition to the agency charged with administering the spending program. In *Bennett v. Kentucky Department of Education*, 470 U.S. 656 (1985), for example, the Supreme Court addressed a State's expenditure of federal funds provided under Title I of the Elementary and Secondary Education Act. It held that in evaluating the State's past expenditures, the Department of Education should rely on "the statutory provisions, regulations, and other guidelines provided by the Department at that time." *Id.* at 670. The Court thus left no doubt that Congress may provide for Spending Clause legislation, like other legislation, to be implemented by a federal agency through regulations and sub-regulatory guidance. Indeed, the Court emphasized that "the fact that Title I was an ongoing, cooperative program meant that grant recipients had an opportunity to seek clarification of the program requirements." *Id.* at 669. The Court therefore rejected the argument that "ambiguities in the requirements should invariably be resolved against the Federal Government as the drafter of the grant agreement." *Id.*

The panel identified three ways in which it regarded the Offset Provision as insufficiently precise, regarding "(1) how to calculate a 'reduction' in net tax revenue, (2) how to determine whether such a reduction resulted from a tax cut," and "(3) how to tell what particular conduct constitutes an 'indirect' offset." Op. 28. But the third

supposed imprecision is readily resolved by construing the provision in the grant recipients' favor (as the Treasury Department already has done, *see* 87 Fed. Reg. at 4423-4429). Congress often uses the phrase "directly or indirectly" to signal that its objectives cannot be circumvented through artifice. Under the SEC's Rule 10b-5, for instance, "it is unlawful for 'any person, directly or indirectly, … [t]o make any untrue statement of a material fact' in connection with the purchase or sale of securities." *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 141 (2011) (quoting 17 C.F.R. § 240.10b-5(b)). The Supreme Court explained that, in that provision, the phrase "directly or indirectly" does not "broaden the meaning of 'make'"; it "merely clarifies that as long as a statement is made, it does not matter whether the statement was communicated directly or indirectly to the recipient." *Id.* at 147 n.11. So too here: The phrase "directly or indirectly" does not alter the statute's fundamental proscription against using Fiscal Recovery Funds to "offset" a revenue loss from tax cuts; it simply emphasizes that that rule cannot be circumvented through artifice, such as by cutting state spending in a department that receives Fiscal Recovery Funds and then claiming that those state spending cuts pay for a reduction in net tax revenue resulting from tax cuts. The phrase is not readily susceptible to the construction the panel suggested—that a State that spends Fiscal Recovery Funds could be considered to violate the Offset Provision whenever it "enacts a revenue-reducing tax cut" (Op. 29-30). If Congress had intended to make Fiscal Recovery Funds contingent on a State's commitment not to cut taxes, Congress

would have said so. Instead, Congress specified that it was establishing only a restriction on the "use" of the funds. 42 U.S.C. § 802(c)(2)(A) (text and heading).

The other two points noted by the panel involve the sort of particulars that, as the Supreme Court has made clear, Congress can permissibly leave for an agency to resolve rather than specifying in the statute establishing a funding condition. This Court has properly rejected the argument that "Spending Clause legislation 'requires a level of specificity beyond that applicable to other legislation.'" *Cutter*, 423 F.3d at 586. The panel incorrectly declared that an agency's implementing regulations must be confined to "arcane topics." Op. 36. That is contrary to Supreme Court precedents, including the recent decision upholding a regulation requiring that workers in facilities funded by Medicare or Medicaid be vaccinated against COVID-19. *Biden v. Missouri*, 142 S. Ct. 647 (2022). There, the Supreme Court emphasized that the Department of Health and Human Services "has established long lists of detailed conditions with which facilities must comply to be eligible to receive Medicare and Medicaid funds." *Id.* at 650. The Court specifically rejected the argument that "the seemingly broad [statutory] language … authorizes the [Department] to impose no more than a list of bureaucratic rules regarding the technical administration of Medicare and Medicaid." *Id.* at 652.

To resolve this case in the government's favor, the Court need not reason that the Treasury Department's implementing regulations "cure" (Op. 34) an otherwise problematic ambiguity in the Offset Provision, which is why (as the panel noted, Op.

35) the government did not make that argument. The key point is that the Offset Provision is not rendered categorically unenforceable merely because Congress vested the Treasury Department with authority to flesh out and otherwise implement the statute by regulation. Congress expressly authorized the Treasury Secretary to adopt regulations necessary or appropriate to implement the section of the American Rescue Plan Act that established the Fiscal Recovery Fund (including the Offset Provision). *See* 42 U.S.C. § 802(f). Any potential dispute about the reasonableness of the baseline year or the mechanics of measuring a reduction in net tax revenue under the Treasury Department's regulation cannot provide a ground to enjoin enforcement of the Offset Provision itself, which is the only relief sought in the complaint. The omission of certain implementation particulars from a statutory funding condition does not render the condition too ambiguous to be enforced, any more than with any other statute.

## CONCLUSION

The Court should grant rehearing en banc.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney*
    *General*

MARK B. STERN
ALISA B. KLEIN

*/s/ Daniel Winik*
DANIEL WINIK
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*
  *daniel.l.winik@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limit of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,794 words. The petition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in 14-point Garamond, a proportionally spaced typeface.

*/s/ Daniel Winik*
Daniel Winik